**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| **BRYAN T.,**[1] | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. 7:20-CV-536** |
| | ) |
| **KILOLO KIJAKAZI,**[2] **Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff  Bryan T. ("Bryan") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") finding him ineligible for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security

Act ("Act").  42 U.S.C. §§ 401–433, 1381–1381f.  Bryan previously sought judicial review of a

final decision denying his claim for disability benefits and this court remanded his case to the

Commissioner for further administrative proceedings.  Bryan alleges that upon remand, the

Administrative Law Judge ("ALJ") erred by failing to properly assess and accommodate his

mental impairments; failing to properly assess the opinion of the consultative physician

regarding his physical impairments; and failing to properly consider his subjective allegations. I

conclude that the ALJ's decision is supported by substantial evidence.  Accordingly, I

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration
and Case Management of the Judicial Conference of the United States that courts use only the first name and last
initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the
defendant in this case.

**RECOMMEND DENYING** Bryan's Motion for Summary Judgment (Dkt. 17) and

**GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Bryan is not disabled under the Act.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bryan filed for DIB and SSI on May 29, 2013, claiming that his disability began on December 15, 2011.[3] R. 580.  Bryan's date last insured was December 31, 2014; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 12. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  On May 2, 2017, after holding a hearing. ALJ Joseph T. Scruton issued an unfavorable ruing denying Bryan's claim. R. 580–92.  The Appeals Council denied Bryan's

---

[3] Bryan filed a prior DIB application on September 10, 2009, which was denied by a decision issued by ALJ Joseph Scruton on December 14, 2011. Dkt. 117–127.

2

request for review and Bryan filed a civil action in this court challenging that decision.  See

Bryan T. v. Comm'r, Case No. 7:18-cv-282 (W.D. Va.).  This court reversed the Commissioner's

decision and remanded Bryan's case for further administrative proceedings on August 9, 2019.

Id., Dkt. 28.  The Appeals Council then vacated ALJ Scruton's decision and sent the case to ALJ

Thomas W. Erwin for rehearing. R. 620–24.

ALJ Erwin held an administrative hearing, at which Bryan was represented by counsel.

R. 544–75.  On June 3, 2020, he entered a new decision analyzing Bryan's claims under the

familiar five-step process,[4] and partially granting his claim, finding that he was not disabled prior

to May 21, 2020, but became disabled on that date and continued to be disabled through the date

of the decision. R. 510–42.

The ALJ determined that Bryan was insured at the time of the alleged disability and that

he suffered from the severe impairments of degenerative disc disease with history of

compression fracture; hypertension; obesity; benign sebaceous cyst; depression; and panic

disorder. R. 518. The ALJ determined that these impairments, either individually or in

combination, did not meet or medically equal a listed impairment. R. 518–22.  The ALJ

concluded that Bryan retained the residual functional capacity ("RFC") to perform a range of

sedentary work. R. 522.  Specifically, the ALJ found that Bryan can have no exposure to hazards

or unprotected heights; can never use foot controls, kneel or crawl; can occasionally overhead

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

reach, push and pull; climb ramps or stairs, balance, stoop and crouch; and can occasionally have exposure to extreme temperatures, vibrations and pulmonary irritants. Id. The ALJ also determined that Bryan can perform instructions and tasks limited to those that can be learned in thirty days or less; can have no more than occasional changes in the work setting; and can have occasional interaction with the public, coworkers and supervisors. Id.

The ALJ determined that Bryan could not perform his past relevant work of precision lens technician and lathe operator. R. 533.  However, the ALJ determined that, prior to May 21, 2020, Bryan could perform jobs that exist in significant numbers in the national economy, such as ampoule sealer, clearance cutter, or surveillance system monitor. R. 535. However, on May 21, 2020, Bryan's age category changed from a younger individual to an individual closely approaching advanced age.  Therefore, the ALJ determined that, given his new age category, as of May 21, 2020, there are no jobs that exist in the national economy that Bryan can perform. Id. Thus, the ALJ concluded that Bryan was not under a disability prior to May 21, 2020, but became disabled on that date. Bryan filed for direct review of the unfavorable decision in this court.[5] See 20 C.F.R. § 404.984(d); Massey v. Saul, No. 1:19 CV 152 WCM, 2020 WL 4569606, at *1 (W.D.N.C. Aug. 7, 2020) (noting that "When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case.").

---

[5] The Notice of Decision – Partially Favorable, dated June 3, 2020, from the ALJ states:

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action within the [time period provided].

R. 510–11.

## ANALYSIS

### Mental RFC

Bryan asserts that the ALJ failed to properly consider his moderate limitations in concentration, persistence and pace and in interacting with others. Pl. Br. Summ. J. p. 27.[6] Specifically, Bryan asserts that the ALJ's RFC only addresses his skill level and does not consider his ability to sustain work activity over an 8-hour workday. Id. Bryan also argues that the ALJ impermissibly discounted his impairments in concentration, persistence and pace and interacting with others because they are related to his physical pain. Id. at 32.

Bryan was awarded benefits beginning May 21, 2020; thus, the relevant period for Bryan's appeal is from the date of alleged disability, December 15, 2011, through his date last insured, December 31, 2014 (for the DIB claim) and May 21, 2020 (for the SSI claim). Bryan's primary issue is back pain. He has limited complaints relating to his mental impairments, and no treatment specifically for his mental impairments. Bryan testified that his depressed mood is attributable to his pain level, and he does not socialize much because of his pain. R. 67–68. Bryan testified at the May 2020 administrative hearing that he has no ongoing mental health treatment, and was covered by Medicaid beginning in 2019. R. 550. Bryan testified that "a lot of my mental state is 'cause not trusting anybody. Is mainly due to workers' comp and Social Security. And a lot of it has to do with just dealing with pain all the time." R. 557.

This court previously held that ALJ Scruton did not sufficiently explain why he discounted the psychologist opinions in the record that Bryan had a moderate impairment with social functioning, and instead determined that Bryan's social functioning impairment was

---

[6] Bryan's argument regarding to his mental impairments largely consists of recitations of case law, and broad, non-specific allegations that the ALJ's analysis is flawed. The few specific allegations of error Bryan raises are dealt with below.

"mild." Dkt. 607–19.  Here, ALJ Erwin determined that Bryan's social functioning impairment

was "moderate," and limited Bryan to occasional interaction with the public, coworkers and

supervisors.

The relevant medical records regarding Bryan's mental impairments are the same records

and opinions reviewed by this court for Bryan's previous appeal.  On October 29, 2011,

consultative examiner Jeffrey B. Luckett, Ph.D., assessed Bryan and provided a consultative

report. R. 465. Dr. Luckett performed a mental status evaluation, and administered a depression

screening, a cognitive capacity screening, and a personality assessment inventory. R. 466–71.

Dr. Luckett diagnosed Bryan with pain disorder, chronic pain condition, and very mild

adjustment disorder with depressed mood. R. 471. Dr. Luckett concluded that Bryan would be

able to work an eight-hour day and 40-hour week.  However, Dr. Luckett found that Bryan

"needs to be evaluated from a physical standpoint," and that he showed evidence of significant

pain behaviors.  Dr. Luckett found that Bryan's "psychological difficulties in the way of

depression, etc. appeared to be quite mild and understandable given his ongoing pain state."

R. 472. Dr. Luckett concluded that Bryan has no impairment with understanding, remembering

and carrying out simple instructions, or making judgments on simple work-related decisions.

R. 473. He found that Bryan had mild impairments with interacting appropriately with the

public, supervisors and co-workers. R. 474.

On January 15, 2014, Marvin A. Gardner, Jr., Ph.D., examined Bryan and completed a

psychology report. R. 416. Bryan reported that he lived with his mother, had no friends and did

not go to church or belong to any groups. R. 417. Bryan also reported having five or six panic

attacks throughout the year, with unknown triggers. R. 419. Dr. Gardner diagnosed alcohol use

disorder in sustained remission, depressive disorder "due to chronic back pain which causes

significant impairment in social functioning," the possibility of avoidant personality traits, and

mild panic disorder. R. 420. Dr. Gardner concluded that Bryan could perform simple, repetitive

tasks in the workplace, and that "[h]e is able to accept instructions from supervisors with no

more than a moderate impairment of social interaction due to irritability secondary to chronic

pain. He is able to interact with coworkers and with the general public with no more than a

moderate impairment of social interaction." R. 420–21.

On January 22, 2014, state agency psychologist Richard Luck, Ph.D., reviewed Bryan's

records and determined that he had moderate difficulties with maintaining social functioning and

moderate difficulties in maintaining concentration, persistence or pace. R. 142.  Dr. Luck found

that Bryan was moderately limited in his ability to interact appropriately with the general public,

accept instructions and respond appropriately to criticism from supervisors, and get along with

coworkers or peers without distracting them or exhibiting behavioral extremes. R. 147.  Dr. Luck

noted, "[t]he claimant could have difficulty accepting instruction or to respond appropriately to

criticism from supervisors as well as interacting with the genral [sic] public. Pain exacerbates his

symptoms and makes him more irritable with others." Id.  On September 15, 2014, state agency

psychologist Louis Perrott, Ph.D., reviewed Bryan's records and agreed with Dr Luck's findings.

R. 200.

In step 3 of his decision, the ALJ determined that Bryan had a mild limitation in the

domains of understanding, remembering or applying information and adapting or managing

oneself; and moderate limitations in the domains of interacting with others and concentrating,

persisting or maintaining pace. R. 520.  Regarding interacting with others, the ALJ noted that the

medical evidence showed that Bryan sometimes interacted in a depressed or anxious manner

with providers, he reported that he can shop for medicine regularly and groceries rarely, and he

did not leave the house much and has trouble getting along with others. Id.  The ALJ noted that

both state agency mental health opinions indicated that Bryan had moderate social functioning

limitations. The ALJ also noted that Bryan lives with his mother and has one close friend, and

his limited social interaction appears to be primarily due to his physical pain when out of his

house for prolonged periods. The ALJ noted that Bryan was pleasant and cooperative at medical

appointments, and did not have serious deficiencies in eye contact, speech or conversation.

Bryan reported no serious problems with interpersonal interaction, and reported socializing with

family and his friend in and outside of his home. The ALJ stated that he "considered the social

interacting issue discussed in the remand from United States District Court and limited the

claimant to occasional interaction with the public, coworkers and supervisors." Id.

Regarding concentration, persistence or maintaining pace, the ALJ noted that Bryan

reported that he could pay attention for 30 minutes and had trouble completing tasks. R. 521. A

mental status examination in January 2014 found that Bryan's concentration was impaired, but

he could perform simple, repetitive work tasks. The ALJ noted that in September 2016, Bryan's

thought content was within normal limits, he was oriented, he could manage his own funds, he

could watch television, and handled his own activities of daily living. The ALJ concluded that

Bryan has a moderate impairment with concentration, persistence or pace, and can perform

instructions and tasks limited to those that can be learned in thirty days or less, and can have no

more than occasional changes in the work setting. Id.

In step 4 of his decision, the ALJ noted that Bryan was diagnosed with depression and

panic disorder, and testified that his mental health was mostly under control. R. 523. The ALJ

noted that Bryan's mental health issues appear to be mainly connected to his lower back pain,

and he did not usually have a prescription for psychiatric medication, did not attend counseling

sessions and did not have a psychiatric admission. Bryan's mental status examinations were generally normal except for a depressed or anxious mood and affect or pain related behaviors. Id.

The ALJ reviewed the opinions provided by state agency psychologists Drs. Luck and Perrot, and the opinions provided by consultative examiners Drs. Luckett and Gardner, and gave all the opinions some weight, "because they were generally consistent with the mental evidence of record." R. 528–30.

The ALJ provided an analysis of Bryan's mental symptoms, and noted that his treatment has been essentially routine and conservative, and has been generally successful in controlling his symptoms. R. 531. The ALJ noted that Bryan has been diagnosed with depression and panic disorder; his mental health issues appear to be connected to his lower back pain; he did not generally have prescriptions for psychiatric medication; and he did not generally attend counseling sessions. The ALJ noted that Bryan had no current mental health treatment or medications. Bryan's mental status examinations were generally normal, aside from depressed or anxious mood and affect or pain related behaviors. R. 532. The ALJ noted that Bryan's mental symptoms were treated routinely, conservatively and successfully. The ALJ found that Bryan's limited social interaction appeared to be primarily due to his physical pain when out of his house for prolonged periods. The ALJ considered the social interaction issue discussed by this court in the prior decision remanding this case to the Commissioner, and limited Bryan to occasional interaction with the public, coworkers and supervisors. Id.

The ALJ noted that he would expect to see abnormalities on Bryan's mental status examinations, given his complaints of trouble with concentration, memory and social functioning. R. 532. However, Bryan's mental status exams were normal at appointments, except for a depressed or anxious mood and affect with pain behaviors. R. 533. Bryan had

normal insight, judgment, concentration and memory at appointments. The ALJ noted that

mental status exam findings are not necessary to establish disability, but are one factor in

weighing Bryan's allegations of mental symptoms. Id.

Thus, the ALJ concluded that Bryan was capable of sedentary work with instruction and

tasks limited to those that can be learned in thirty days or less; no more than occasional changes

in the work setting; and occasional interaction with the public, coworkers and supervisors.

R. 522.

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate

and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for

remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th

Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not

support a particular opinion means 'the analysis is incomplete and precludes meaningful

review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016)

(quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348,

2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain

the conclusions reached and identify the record evidence which supports those conclusions. Only

then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily

'account for a claimant's limitations in concentration, persistence, and pace by restricting the

hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform

simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th

Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does

"not impose a categorical rule that requires an ALJ to always include moderate limitations in

concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Bryan asserts broad, non-specific claims that the ALJ's decision fails to properly account for his moderate impairment with concentration, persistence or pace, and fails to include the necessary explanation and "logical bridge" between the evidence and ALJ's decision. I disagree. Contrary to Bryan's arguments, the ALJ explained his reasoning and the RFC in detail, including specific references to the medical records and opinions. The ALJ considered Bryan's mental health complaints, his very minimal mental health treatment, his generally normal mental status exams, his daily activities, his testimony that his mental concerns are related to his physical pain, and the psychologist opinions in the record. The ALJ concluded that Bryan had moderate impairments with the domains of concentration, persistence and pace and social interaction; the ALJ found the psychologist opinions as to Bryan's specific mental work abilities persuasive; and the ALJ provided reasonable accommodations for Bryan's concentration, persistence or pace and social interaction in the RFC. Thus, the ALJ provided the required explanation and the logical

bridge for this court to review his decision. Notably, no treating, consulting or reviewing physician found that Bryan suffered from more restrictive mental health limitations than those assessed by the ALJ.

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Unlike the claimant in Mascio, the evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Bryan can perform the basic mental demands of sedentary work, with specific limitations of instructions and tasks that can be learned in thirty days or less, and no more than occasional changes in the work setting. The ALJ explained why Bryan's moderate limitations in concentration, persistence, or pace, and interacting with others did not translate into a limitation in the RFC beyond that imposed.[7]

In contradiction to Bryan's claim that the RFC addresses only skill level and not an ability to stay on task, the ALJ specifically noted that the domain of concentrating, persisting or maintaining pace "considers the individual's ability to sustain an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted number or length of rest periods customarily provided." R. 520. The ALJ noted Bryan's complaints that he could pay attention for thirty minutes and has trouble completing tasks, but also gave weight to Dr. Gardner's conclusion that Bryan had no impairment with concentration, persistence or pace when attempting simple and repetitive work tasks. R. 521. The ALJ also noted Dr. Luckett's conclusion that Bryan can complete an 8-hour day and 40-hour workweek.

---

[7] Bryan also argues that the ALJ failed to provide appropriate questions to the vocational expert. However, the ALJ's hypothetical questions were clear and with support in the record. I find the ALJ's RFC findings were supported by substantial evidence and the ALJ presented an appropriate question to the vocational expert.

R. 529. The ALJ noted that Bryan's mental status reports reflected normal concentration and memory at appointments. R. 533.  The ALJ concluded that Bryan can perform work with instructions and tasks that can be learned in thirty days or less, and with no more than occasional changes in the work setting.

Bryan also asserts that ALJ Erwin impermissibly discounted his mental impairments because of their relationship to his physical pain. While ALJ Erwin recognized the obvious connection between Bryan's lack of social interaction and his pain level, he did not use that relationship to dismiss Bryan's impairment with social interaction.  Rather, ALJ Erwin found that Bryan suffered from a moderate impairment with social interaction and provided an accommodation in the RFC. ALJ Erwin did not discount the psychologist opinions that Bryan had a moderate social impairment with no explanation; but rather, found the opinions persuasive, discussed Bryan's alleged symptoms, minimal treatment and daily activities, and arrived at an accommodation in the RFC.

Bryan also asserts that the ALJ failed to specifically address his ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 27.  However, Bryan does not point to any evidence reflecting difficulty with persistence or pace. Bryan's subjective statements do not indicate any issues in those areas, nor do any of the mental health or medical records reflect concerns with his ability to sustain work. The ALJ is not required to make specific findings regarding issues that are unsupported by the evidence in the record.  See Shinaberry, 2020 WL 908887, at *6 (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation).  The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of

the medical and non-medical evidence, Bryan's alleged symptoms, and the medical opinions of record.

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon Bryan's testimony, his treatment records, and the opinions of the reviewing and consulting physicians to find that despite Bryan's moderate mental health impairments, he could perform a limited RFC. The ALJ reviewed Bryan's record evidence in detail, and then explained how the RFC accommodated each of Bryan's mental health limitations in the analysis. Thus, the ALJ's analysis of Bryan's mental health impairments is supported by substantial evidence.

**Physical RFC**

Bryan asserts that the ALJ failed to perform a function-by-function analysis of his limitations and failed to properly consider whether he would need to take breaks during the workday due to pain. Pl. Br. Summ. J. p. 34.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite to specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996

WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ

does not perform an explicit function-by-function analysis," agreeing instead with the Second

Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity

to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636

(4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court

held remand was necessary, in part, because the ALJ failed to indicate the weight given to two

residual functional capacity assessments which contained relevant conflicting evidence regarding

the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL

1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Bryan's argument that the ALJ was required to make "specific findings whether his

impairments would cause him to experience episodes of fatigue or pain necessitating breaks and

how often those breaks would occur" is unavailing. During the March 2021 administrative

hearing, Bryan testified that he needs to lay down every three hours or so during the day

(R. 562), aches if he tries to stay up for long periods of time, that he can sit for an hour at a time,

and lays in bed most of the day. R. 563. Bryan also testified that he would "piddle around the

garage" for a couple of hours, and drive short distances. R. 565. The ALJ is not required to make

specific findings related to each of Bryan's subjective assertions.  See Shinaberry v. Saul, No.

18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020), (ALJ did not err in refusing to fully

credit claimant's subjective statements regarding her physical limitations where claimant pointed

to no medical evidence in support of a limitation.).  The ALJ was only required to create a

15

narrative discussion that builds "an accurate and logical bridge from the evidence to his

conclusion," which the ALJ did in his discussion of the medical and non-medical evidence,

Bryan's alleged symptoms, and the medical opinions of record. Bryan's complaints of pain were

acknowledged and considered by the ALJ, and the ALJ provided reasoning for his conclusion

that despite his back pain, Bryan could perform a limited range of sedentary work.  The ALJ's

RFC is, by definition, a determination of what Bryan can perform on a "regular and continuing

basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20

C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2.

The ALJ reviewed Bryan's medical treatment history and the opinions of consultative

examiner Williams Humphries, M.D., and state agency physicians Richard Surrusco, M.D. and

Thomas Phillips, M.D. R. 523–31. The ALJ gave little weight to the opinions of Drs. Surrusco

and Phillips that Bryan could perform light work, and instead found that Bryan is limited to a

range of sedentary work.  R. 528.  The ALJ considered Dr. Humphries's opinions that Bryan is

limited to a range of sedentary work, and gave it some weight, finding a sedentary work

limitation consistent with the medical evidence. R. 529. The ALJ noted that Bryan had lumbar

degenerative disc disease with a history of compression fracture. The ALJ noted that Bryan's

pain was usually controlled with medication and he declined physical therapy, injections or a

gym membership as recommended by his doctor. Id.  The ALJ noted that Bryan had no surgery,

mild diagnostic findings, and a routine pain medication regimen, and his physical examinations

showed a decrease in lumbar lordosis but a full range of motion.   ALJ Erwin recognized that

Bryan had pain with extension past neutral, mild lumbar spasms, and a mildly antalgic gait. The

ALJ also recognized that Bryan's obesity perhaps worsened his back pain. The ALJ noted that

Bryan sometimes went for long periods between appointments with his doctor for pain

management. R. 532. The ALJ also noted that Bryan complained of symptoms related to his

lumbar degenerative disc disease before his alleged onset date while he was still working, and

that his records do not reflect that his condition became notably worse after his alleged onset

date. Id. The ALJ also found it significant that none of Bryan's physicians placed restrictions on

his activity or found that he was unable to work. R. 533.  Thus, the ALJ concluded that Bryan

could perform a limited range of sedentary work from his alleged onset date in 2009 through

May 21, 2020.

The ALJ considered Bryan's complaints and explained why the evidence did not support

greater RFC restrictions. This narrative discussion allows this court to see how the evidence in

the record—both medical and nonmedical—supports the ALJ's RFC determination. Because I

was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's

conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

Bryan also asserts that the ALJ failed to properly assess the opinions of consultative

examiner Williams Humphries, M.D., regarding his ability to walk during the workday. Pl. Br.

Summ. J. p. 35. On October 23, 2011, Dr. Humphries examined Bryan and completed a

consultative report. R. 455.  Dr. Humphries concluded that Bryan could lift and carry 10 pounds

frequently and up to 20 pounds occasionally; sit for one hour without interruption; stand and

walk for 30 minutes without interruption; sit for 6 hours total in an 8-hour workday; and stand

and walk two hours total in an 8-hour workday. R. 459–60.  Dr. Humphries examined Bryan a

second time on September 14, 2016, and  provided an updated consultative report. R. 497.  Dr.

Humphries's recommended restrictions on lifting, carrying, sitting, standing and walking

remained the same. R. 501.  The ALJ reviewed Dr. Humphries's opinions and gave them some

weight, "because a sedentary exertional level was generally consistent with the medical evidence of record." R. 530.

Bryan asserts that Dr. Humphries's opinions combined his ability to walk and stand for a total of 2 hours together, and therefore "lead[s] to the conclusion" that Bryan would need to walk during the workday. Bryan asserts that walking during the workday would preclude all work under his sedentary RFC. Pl. Br. Summ. J. p. 35. However, Dr. Humphries's opinions could just as easily be interpreted to mean that Bryan can stand for 2 hours in an 8-hour workday and/or walk for 2 hours in an 8-hour workday. Either way, the ALJ did not adopt Dr. Humphries's opinions wholesale, but gave them "some" weight, and determined that Bryan is limited to a sedentary RFC with postural and environmental limitations.

The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Bryan's medical records, the medical opinions, and Bryan's hearing testimony. Even if Bryan's argument correctly interprets Dr. Humphries's opinions to state that he will need to sit, stand and walk in an 8-hour workday; the ALJ explained why he gave Dr. Humphries's opinions some weight, and determined that, prior to May 21, 2020, Bryan could perform a limited range of sedentary work.

### Subjective Allegations

Bryan argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 36. Bryan takes issue with the ALJ's characterization of his treatment as routine and conservative, with the ALJ's statement that treatment has been generally

successful in controlling his symptoms, and with the ALJ's reference to his decision to decline physical therapy and his refusal of lumbar injections. Bryan's arguments in this section of his brief amount to a disagreement over the ALJ's characterization of his treatment history. Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the substantial evidence standard. The Fourth Circuit is clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Bryan's arguments amount to a request that the court reweigh the evidence, which I am not permitted to do. The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about

the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required

to find the claimant disabled." Arakas v. Comm'r, 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR

16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be

measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the

ALJ must consider the entire case record and may "not disregard an individual's statements

about the intensity, persistence, and limiting effects of symptoms solely because the objective

medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ considered Bryan's allegations of symptoms and pain, and found that his

impairments could reasonably be expected to cause his alleged symptoms, but that his

statements concerning the intensity, persistence and limiting effects of those symptoms are not

fully supported. R. 531. The ALJ supported this conclusion with a narrative discussion of

Bryan's medical treatment, his physical examination findings, his failure to follow the

treatment recommendations of his doctors, the time between his pain management

appointments, his mental health complaints and minimal mental health treatment, his

complaints of symptoms prior to his alleged onset date while he was still working, and the lack

of restrictions noted by Bryan's treating physicians. R. 531–33.

Bryan also asserts that the ALJ failed to qualify the extent to which he performed daily

activities. Pl. Br. Summ. J. p. 37.  Bryan alleges that the ALJ failed to acknowledge that he

performs daily activities intermittently with frequent rest breaks, citing to Arakas v. Comm'r,

and Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for the proposition that an ALJ may

not consider the type of activities a claimant can perform without also considering the extent to which he can perform them. Id.

Here, the ALJ made minimal references to Bryan's daily activities, noting, "[t]he claimant said he lived with his mother, did household chores, prepared simple meals, and watched television.  Given the complaints of disabling symptoms and limitations, such activities are not limited to the extent one would expect." R. 532. This is the only statement referencing Bryan's daily activities in the ALJ's analysis, and does not provide a basis to remand this case. The ALJ relied upon other, more significant, evidence when assessing Bryan's subjective allegations, including his treatment record; his physical examinations; that his treatment has generally been successful controlling his symptoms; his failure to follow his doctor's recommendations to attend physical therapy, receive injections and participate in an exercise program; the long periods between his pain management appointments; and the failure of his physicians to limit his activities.

A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis

of Bryan's subjective complaints with substantial evidence, and that Bryan could perform

sedentary work through May 21, 2020.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the

Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Bryan's

motion for summary judgment and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation which must be filed within fourteen (14) days

hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual

recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: December 23, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge